UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
v.                             )      No.:   3:21-CR-145-TAV-JEM-4
                               )
ANTHONY L. WALDO,              )
                               )
            Defendant.         )

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on defendant's objections [Docs. 241, 276] to the Presentence Investigation Report ("PSR") [Doc. 237] and supplemental objections [Doc. 303] to the Revised Presentence Investigation Report ("RPSR") [Doc. 284]. The government responded to these objections [Docs. 281, 307]. For the reasons set forth below, defendant's objections to the RPSR are **OVERRULED in part** and **SUSTAINED in part** or considered **WITHDRAWN**.

## I.      Background

On May 23, 2023, defendant pled guilty to conspiracy to distribute 50 grams or more of methamphetamine and a quantity of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C) (Count One), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Nine) [Doc. 210]. The probation officer disclosed the original PSR [Doc. 237], and defendant, through counsel, Mark Brown, filed objections [Doc. 241].

On February 1, 2024, Mr. Brown filed a motion to withdraw as defendant's attorney [Doc. 259], which the Court granted [Doc. 262]. Wesley Stone was appointed as counsel of record for defendant [*Id.*]. After Mr. Stone's appointment, defendant moved to supplement his original notice of objections [Doc. 275]. The Court granted this motion [Doc. 279], accepted defendant's supplement [Doc. 276], and ordered the government to respond [Doc. 280]. The government responded accordingly [Doc. 281]. On October 24, 2024, the probation officer filed an addendum to the PSR [Doc. 283] and disclosed the RPSR [Doc. 284].

On February 18, 2025, defendant sought leave to file a second supplement to his notice of objections, specifically to address revisions made in the RPSR [Doc. 302]. The Court granted this motion [Doc. 305], accepted defendant's second supplement [Doc. 303], and ordered the government to respond [Doc. 306], which it did [Doc. 307]. The probation officer filed a second addendum addressing the defendant's second supplement and the government's response [Doc. 308].

On March 4, 2025, the Court held a sentencing hearing [Doc. 311]. At this hearing, the Court heard arguments on defendant's objections to the PSR and RPSR and took the matter under advisement [*Id.*]. The Court now addresses defendant's objections. The Court will address any remaining sentencing arguments at the final sentencing hearing, which will be scheduled after the entry of this Memorandum Opinion and Order.

2

## II.    PSR Objections

Under Federal Rule of Criminal Procedure 32(f), after receiving the PSR, a party may submit any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report. Fed. R. Crim. P. 32(f)(1). The Court then must either rule on the disputed portions of the presentence investigation report or determine that a ruling is unnecessary either because the matter will not affect sentencing or because the court will not consider the matter in sentencing. Fed. R. Crim. P. 32(i)(3)(B). The Sixth Circuit requires "literal compliance" with this rule because the sentencing court's factual findings "help to ensure that defendants are sentenced on the basis of accurate information and provide a clear record for appellate courts, prison officials, and administrative agencies who may later be involved in the case." *United States v. Monus*, 128 F.3d 376, 396 (6th Cir. 1997) (internal quotation marks and alterations omitted). Once a defendant raises an objection, the Court must make a factual finding by a preponderance of the evidence. *United States v. White*, 492 F.3d 380, 416 (6th Cir. 2007). The Court first turns to defendant's objections that are now withdrawn or moot.[1]

---

[1] Unless otherwise noted, the paragraph numbers used in this Memorandum Opinion and Order shall refer to those in the RPSR as the paragraph numbers shifted upon revision of the original PSR.

The Court notes that some of these objections were communicated as withdrawn or moot at the March 4, 2025, sentencing hearing, but for clarity of the record and out of an abundance of caution, the Court will address all of defendant's objections.

3

### A. Withdrawn or Moot Objections

#### 1. Paragraphs 76 and 77

Three criminal history points were assigned to the offense described in Paragraph 76 of the RPSR, and three criminal history points were assigned to the offense described in Paragraph 77 of the RPSR [RPSR ¶¶ 76–77; *see* PSR ¶¶ 75–76]. Defendant originally objected to these paragraphs, claiming that the sentences for the offenses should be treated as a "single sentence" and thus, should not be counted separately for purposes of criminal history points [Doc. 241, pp. 4–5; Doc. 276, pp. 3–5]. At the sentencing hearing on March 4, 2025, defendant withdrew this objection. Accordingly, the Court finds such objection to be **WITHDRAWN**.

#### 2. Paragraphs 69 and 70

In the original PSR, two criminal history points were assigned to the offense described in Paragraph 69 of the RPSR, and two criminal history points were assigned to the offense described in Paragraph 70 of the RPSR [RPSR ¶¶ 69–70; *see* PSR ¶¶ 68–69]. Defendant objected to the assignment of these four total points, arguing that more than 10 years had elapsed between the time he was sentenced and the time he became involved in the instant conspiracy [Docs. 241, pp. 2–4; Doc. 276, pp. 2–3]. *See* U.S.S.G. § 4A1.1 cmt. n.2 (citing § 4A1.2(e)) (stating that "[a] sentence [of at least sixty days not counted in § 4A1.1(a)] imposed more than ten years prior to the commencement of the instant offense is not counted").

4

The government [Doc. 281, p. 3], as well as the probation officer [Doc. 283, p. 2], agreed with defendant's objection. Thus, the RPSR reflects Paragraphs 69 and 70 as adding no criminal history points [RPSR ¶¶ 69–70]. Accordingly, defendant's objection here is **OVERRULED as moot**.

### 3. Paragraph 101

In the original PSR, one criminal history point was added for the offense described in Paragraph 101 of the RPSR, stating defendant had been "convicted" of the offense but not yet sentenced [RPSR ¶ 101; *see* PSR ¶ 85]. Defendant objected to the assignment of this criminal history point, arguing in his first supplement that he was not "convicted" of the offense, that the charges had been dismissed, and therefore, no criminal history points should be assigned [Doc. 276, p. 6; *see* Doc. 276-1].

The probation officer agreed with defendant's objection [Doc. 283, p. 5] and moved the case to the "Other Arrests" section in the RPSR [RPSR ¶ 101]. Accordingly, defendant's objection here is **OVERRULED as moot**.

### B. Objections Unrelated to the Assignment of Criminal History Points or Offense Level

### 1. Page 3

On page 3 of the RPSR, it states that defendant has zero dependents and that one of defendant's aliases is "Michael Lewis Waldo" [RPSR, p. 3]. Defendant objects to each of these statements [Doc. 241, p. 1; Doc. 276, p. 1]. First, regarding dependents, defendant argues that he has three confirmed children and possibly a fourth "that can only be confirmed through a DNA test" [Doc. 241, p. 1]. Second, regarding the disputed alias,

5

defendant contends that "Michael Lewis Waldo" is his brother and therefore, the inclusion of this name as his alias is factual error [*Id.*].

In response, the probation officer states that defendant has three adult children and one possible minor child, but none of these "meet the criteria for a dependent" [Doc. 283, p. 1 (defining a dependent as "someone who the defendant is responsible for supporting financially")]. As to defendant's alias objection, the probation officer states that the name "Michael Lewis Waldo" is listed on defendant's "criminal history and his National Crime Information Center (NCIC) record check making it an alias" [*Id.* at 2]. The probation officer notes that criminal history entries into NCIC are done with fingerprints [*Id.*].

As stated previously, under Federal Rule of Criminal Procedure 32(i)(3)(B), the Court "must—for any disputed portion of the presentence report . . . rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Pursuant to this Rule, and given defendant's objections here will not affect sentencing, the Court **DECLINES** to rule on these objections.

### 2.  Paragraphs 52–65, 67–68, and 80

Paragraphs 52 through 65, 67, 68, and 80 of the RPSR describe offenses for which no criminal history points are assigned [RPSR ¶¶ 52–65, 67–68, 80]. Defendant objects to the inclusion of these paragraphs, stating "[i]t does not appear probation obtained verification" for these offenses "as documents apparently were requested but not received"

6

[Doc. 241, p. 4; Doc. 276, p. 3]. Defendant adds that for the offense described in Paragraph 54, this conviction belongs to his brother [Doc. 241, p. 4].

Similarly to the above objections, a ruling is unnecessary as to the objections to these paragraphs as it would not affect sentencing. Specifically, as all of the offenses described in the relevant paragraphs do not add criminal history points, the defendant's criminal history score and category are unaffected by the inclusion of these paragraphs. And in turn, defendant's guideline range is also unaffected. Therefore, pursuant to Federal Rule of Criminal Procedure 32(i)(3)(B), the Court **DECLINES** to rule on these objections.

### 3. Paragraph 88[2]

Paragraph 88 of the RPSR describes an offense for which defendant was charged but as to which no final disposition has been reached [RPSR ¶ 88]. The RPSR lists the offense as a "Pending charge" [*Id.*]. Defendant objects to this paragraph, stating it has not been verified [Doc. 241, p. 5; Doc. 276, p. 5]. Additionally, defendant states that he has been in federal custody since December 17, 2021, and thus, it would be "impossible" for him to "have been charged in Loudon County on November 28, 2022" [Doc. 241, p. 6].

In response, the probation officer agrees that defendant has been incarcerated since December 17, 2021, but states that the offense at issue occurred on October 28, 2002, not

---

[2]  The Court notes that, at the sentencing hearing, defense counsel appeared to withdraw this objection but also raised concern about defendant potentially having "outstanding process." Defense counsel alluded to the fact that this concern, however, might be for the Bureau of Prisons rather than this Court. Given defense counsel's statements of concern, the Court will address defendant's objection to Paragraph 88, regardless of whether it was withdrawn.

7

November 28, 2022, as stated by defendant [Doc. 283, p. 3]. The probation officer also notes that defendant's objection does not affect the guideline range [*Id.*].

As with the above objections, a ruling is unnecessary as to defendant's objection here because it would not affect sentencing. Specifically, the offense described in Paragraph 88 does not add any criminal history points, leaving defendant's criminal history category and guideline range unaffected. Therefore, pursuant to Federal Rule of Criminal Procedure 32(i)(3)(B), the Court **DECLINES** to rule on this objection.[3]

### C.     Objections Relating to the Assignment Criminal History Points

#### 1.     Paragraph 66

Paragraph 66 of the RPSR describes an offense for which three criminal history points were assigned [RPSR ¶ 66]. Defendant objects to the addition of criminal history points for this offense [Doc. 241, p. 2; Doc. 276, pp. 1–2]. Specifically, defendant argues that his sentence for the offense expired more than fifteen years prior to his commencement of the instant offense, and therefore, he should not be assigned any criminal history points for the offense [Doc. 276, p. 2 (citing U.S.S.G. § 4A1.1, cmt. n.1)]. In support, defendant states that the expiration date for his Paragraph 66 offense sentence was December 1, 2005 [*see* RPSR ¶ 66], and the date he became active in the instant conspiracy was December 4, 2020, "when it was first alleged [that defendant] sold a controlled substance to a cooperating agent" [Doc. 276, p. 2].

---

[3]    The Court also notes that it does appear, as acknowledged by the probation officer's response [Doc. 283, p. 3], that defendant mistakenly read the arrest date for the offense in Paragraph 88 to be in 2022 rather than 2002 [*See* Doc. 241, p. 6; RPSR ¶ 88].

In response, the government states that defendant's objection ignores a report turned over in discovery as well as defendant's own text messages [Doc. 281, pp. 2–3; Doc. 281-1; Doc. 281-2]. Turning first to the report submitted by the government, it provides that on October 5, 2020, defendant was the passenger in a vehicle traveling in the Eastern District of Tennessee that was pulled over for displaying a stolen license plate [Doc. 281-1, p. 4]. During the traffic stop, several bags of illegal narcotics, including methamphetamine and heroin, were discovered along with a scale, small plastic baggies, and a meth pipe [*Id.*]. Defendant admitted that the pipe was his, but he denied possessing the narcotics [*Id.*]. However, defendant did admit to "being a middle man in narcotic transactions in order to support his drug habit" [*Id.*]. The driver of the vehicle ultimately confessed that she had been hiding defendant's drugs [*Id.*]. Both defendant and the driver were arrested [*Id.*].

Next, the government points to text messages discovered during a data extraction of defendant's phone, arguing that these messages show defendant taking orders for narcotics in October 2020 [Doc. 281, pp. 2–3; Doc. 281-2]. As an example, the government states that on October 3, 2020, defendant received a message stating, "Hey could you give a 30 and me and Bryan will be even on his Xterra? He was going to give Charlie 150 to do it but I only got that 40 from you. I don't know how to get ahold of him or anything" [Doc. 281, p. 3; Doc. 281-2, p. 5]. Another example cited by the government, occurring on October 4, 2020, is a "customer" asking the defendant for "half on some good boy" to which defendant responded, "Ok just let me know when or if u up this way n have n I'll come meet u" [Doc. 281, p. 3; Doc. 281-1, p. 3]. The government states that "boy" is slang

9

for heroin [Doc. 281, p. 3]. In light of this evidence, the government argues that the Court should find that defendant's instant offense conduct occurred beginning at least as early as October 5, 2020, and therefore, the assigned criminal history points in Paragraph 66 should remain [*Id.*].[4]

The probation officer, in her response, states that it appears the criminal history points in Paragraph 66 of the RPSR are appropriately applied [Doc. 283, p. 2]. And, based on the information provided by the government, the probation officer updated the information regarding the dates of the conspiracy, as reflected in Paragraphs 31 and 50 of the RPSR [*Id.*]. The probation officer states that, based on the new timeline provided by the government, defendant's conduct in the conspiracy commenced on October 5, 2020, two months earlier than previously indicated in the PSR [*Id.*].

Under U.S.S.G. § 4A1.1(a), three criminal history points are to be added "for each prior sentence exceeding one year and one month." Further, U.S.S.G. § 4A1.2(e)(1) states that "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period." Application Note 8 of U.S.S.G. § 4A1.2, citing § 1B1.3, states that the term "commencement of the instant offense" includes "any relevant

---

[4] At the sentencing hearing held on March 4, 2025, the government presented the same evidence, adding that the indictment itself charged a conspiracy beginning in or about August 2020 [*See* Doc. 3, p. 1].

10

conduct." Relevant conduct includes "all acts and omission committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by defendant" that occurred "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A). "'Relevant conduct' may include state crimes over which the federal courts have no jurisdiction." *United States v. Hodge*, 805 F.3d 675, 679 (6th Cir. 2015) (collecting cases). "Relevant conduct must also bear some logical relationship to the offense of conviction." *See id.* at 680 (citation omitted).

Based on the parties' argument and the government's evidence, the Court finds that defendant's conduct in October 2020 was "relevant conduct" to the instant offense of conspiracy to distribute 50 grams or more of methamphetamine and a quantity of heroin, such that it can be described as acts committed by defendant "during the commission of the offense of conviction" or, under U.S.S.G. § 4A1.2(e)(1), as the "commencement of the instant offense." The text messages provided by the government indicate that defendant was involved in narcotics transactions in early October 2020 [Doc. 281-2]. In particular, and as noted previously, an individual asked defendant for "half on some good boy[,]" which the government submits means heroin [*Id.* at 3; Doc. 281, p. 3]. And defendant replied, coordinating when he and the individual would meet up [Doc. 281-2, p. 3; Doc. 281, p. 3].

Additionally, as the government discusses, defendant was involved in a traffic stop occurring on October 5, 2020, in which illegal narcotics were found, including

11

methamphetamine and heroin [Doc. 281-1, p. 4]. And during this stop, defendant also admitted to being the middleman in narcotics transactions to support his drug habit [*Id.*]. The Court also notes that both the PSR and the RPSR contain details related to this traffic stop, and that these details were not objected to by defendant [PSR ¶ 106; RPSR ¶ 106]. Specifically, under the section titled "Other Arrests," the RPSR[5] states that "According to the Affidavit of Complaint, on October 5, 2020, [defendant] was stopped for having a stolen license plate and was found to possess 9.7 grams of crystal methamphetamine. He admitted to being the middleman for methamphetamine sales" [RPSR ¶ 106]. As laid out in the RSPR, defendant was arrested and charged with possession of methamphetamine for resale, but this charge was dismissed in 2023 while defendant was in federal custody for the instant offense [*Id.*].

Ultimately, the Court finds, by a preponderance of the evidence, that defendant's conduct in October 2020 bears some logical relationship to the instant offense such that it qualifies as relevant conduct, and in turn, "commencement of the instant offense." *See* U.S.S.G. § 4A1.2(e)(1). The evidence provided by the government shows defendant coordinating heroin transactions via text messages, being in possession of a quantity of methamphetamine that led to a charge of possession for resale, and admitting to being the middleman in narcotics transactions. This evidence in conjunction with the fact that the instant conspiracy charged is alleged to have begun in August 2020, and that defendant has

---

[5] Paragraph 106 of the original PSR contains identical statements.

12

pled guilty to conspiring to distribute methamphetamine and heroin, lead the Court to such a finding. Thus, in consideration of U.S.S.G. § 4A1.2(e)(1), defendant's objection to the criminal history points assigned in Paragraph 66 of the RPSR is **OVERRULED**.[6]

### 2.    Paragraphs 73–74, 79, 84–85

Paragraphs 73, 74, 79, 84, and 85 of the RPSR describe offenses for which criminal history points were assigned [RPSR ¶¶ 73–74, 79, 84–85]. Similarly to defendant's objections discussed in Section II(B)(2), defendant argues that "[p]robation has not verified through documents or otherwise the validity of these convictions[,]" stating that instead, "probation has simply relied on online records" [Doc. 241, p. 5; Doc. 276, p. 5].

In response to defendant's objections here, the government argues that defendant must do more than assert "bare denials of facts" [Doc. 281, pp. 4–5 (citing *United States v. Cover*, 800 F.3d 275, 278 (6th Cir. 2015)]. In response, the probation officer states:

> The officer gathers information on all known convictions, juvenile adjudications, arrests, and pending cases. In addition, the officer gathers reliable information on any other criminal conduct, whether or not formally charged, that the court may rely upon when imposing sentence. This information allows the court to calculate the advisory sentencing guidelines, consider departures, and determine the most appropriate sentence. . . . .
>
> The starting point for most criminal history investigations will be automated record checks, such as the NCIC. Some probation offices may also have automated access to state and local criminal records. However, the automated records typically do not contain all of the information that the court would need to impose a sentence. Therefore, officers should ***attempt*** [] to obtain records from law enforcement, the courts, and correctional agencies that provide details that may help the court understand the defendant's prior behavior. These include but are not limited to arrest records/reports,

---

[6] The Court notes, for the reasons explained *infra*, that even if the Court were to sustain defendant's objection here, his criminal history category would remain at VI.

13

> complaints/indictments, plea agreements, judgments/docket sheets, previously prepared pretrial/presentence reports, institutional records, and probation and parole records.

[Doc. 283, p. 3 (internal quotation marks omitted) (emphasis in original) (quoting Guide to Judiciary Policy, vol. 8D, ch. 2 § 260(a), (e) (2021))]. Additionally, the probation officer cites to 18 U.S.C. § 3361 which states, "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" [*Id.*]. Taking into consider these provisions, the probation officer states that she attempted to obtain records, but they were not available; however, NCIC confirmed the arrests [*Id.*]. Ultimately, the probation officer asserts that online records and NCIC records were sufficient to prepare the presentence report [*Id.*].

"When a probation officer investigates the background and character of a defendant and publishes her findings in a presentence report, the district court is permitted to rely upon those facts at sentencing unless there is a dispute." *United States v. Cover*, 800 F.3d 275, 278 (6th Cir. 2015) (internal quotation marks omitted) (first citing Fed. R. Crim. P. 32(i)(3); and then *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003)). To create a factual dispute about the presentence report, "a defendant 'must produce some evidence that calls the reliability or correctness of the alleged facts into question'—a burden of production that requires 'more than a bare denial.'" *Cover*, 800 F.3d at 278 (quoting *Lang*, 333 F.3d at 681); *accord United States v. Small*, 988 F.3d 241, 257 (6th Cir. 2021). "Only when a defendant produces '*some evidence*' contradicting the presentence report must a

14

district court, at sentencing, engage in factfinding on its own." *Cover*, 800 F.3d at 278 (emphasis in original) (quoting *United States v. Adkins*, 729 F.3d 559, 570 (6th Cir. 2013)).

The Court finds that defendant's objections here to Paragraphs 73, 74, 79, 84, and 85 of the RPSR amount to nothing more than a "bare denial." *See Cover*, 800 F.3d at 278 (citation omitted). Defendant has produced nothing to contradict any of the evidence in the presentence report, and without such evidence, the Court is permitted to rely on the presentence report's accuracy. *See id.* at 279. Accordingly, defendant's objections here are **OVERRULED**.

### 3. Paragraphs 81 and 82

Paragraphs 81 and 82 of the RPSR describe offenses for which criminal history points were assigned [RPSR ¶¶ 81–82]. Defendant posits two objections to these paragraphs. First, defendant objects to the inclusion of criminal history points because probation has "not verified through documents or otherwise the validity of these convictions" [Doc. 241, p. 5; Doc. 276, p. 5]. For the same reasons as above, *see supra* Section II(C)(2), the Court **OVERRULES** this first objection to Paragraphs 81 and 82 of the RPSR.

In his first supplement to his objections, defendant provides his second objection to these paragraphs, arguing that he should only be assigned two criminal history points for both offenses instead of four total "because these multiple sentences should be treated as a single sentence" [Doc. 276, p. 6]. Defendant further explains that he was sentenced on the

15

same day, June 2, 2015, for the offenses described in Paragraphs 81 and 82, citing to U.S.S.G. § 4A1.2(a)(2).

In response to defendant's objection, the government argues that the offenses in Paragraphs 81 and 82 present different arrest dates meaning the two offenses should count separately for purposes of criminal history points [Doc. 281, pp. 5–6]. The probation officer, in her response, states that it is her opinion that there was an intervening arrest between the two offenses in Paragraphs 81 and 82 of the RPSR, and in turn, that the criminal history points are appropriately applied [Doc. 283, pp. 3–4].

At the sentencing hearing, defendant offered further proof as to this objection, providing the Court with state court documents [*See* Doc. 312]. Specifically, defendant argued that for the offense listed in Paragraph 81, he was only provided with a citation for that offense and given a court date of December 9, 2014. When defendant failed to appear in court on that date, a failure to appear capias/bench warrant was issued on January 27, 2015, but it appears that this was recalled the next day. On February 5, 2015, for the same offense, another bench warrant was issued. However, before the bench warrant was executed, defendant was charged on an affidavit of complaint out of Blount County, Tennessee, on February 8, 2015, for the offense in Paragraph 82 of the RPSR, and an arrest warrant was issued the same day. This arrest warrant was returned with a checkmark next to the box stating, "The Arrest Warrant was served on defendant who was already in custody." Defendant submitted at the sentencing hearing that he was arrested on February

16

8, 2015. On February 9, 2015, the bench warrant issued for the offense described in Paragraph 81 was executed while, defendant argues, he was already in custody.

Ultimately, defendant argues that he was merely cited for the offense in Paragraph 81 of the RPSR and arrested on February 8, 2015, for the offense in Paragraph 82 of the RPSR. And, at the time he was arrested for the latter of these offenses, Blount County realized defendant had outstanding process for the bench warrant issued on the former offense. Therefore, defendant argues there was no intervening arrest between the offenses described in Paragraphs 81 and 82. Given this background, and taking into consideration that defendant was sentenced on the same day for the offenses in such paragraphs, defendant submits that he should only receive two total criminal history points for the offenses as opposed to four.[7]

U.S.S.G. § 4A1.2(a)(2), as referenced earlier, states in relevant part:

If the defendant has multiple prior sentences, determine whether those sentences are counted separately or treated as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Treat any prior sentence covered by subparagraph (A) or (B) as a single sentence.

---

[7] At the sentencing hearing, and in response to defendant's objection to Paragraphs 81 and 82 of the RPSR, counsel for the government stated he could not point to a particular arrest record that demonstrates an intervening arrest. Regardless, counsel argued, the Court's decision as to this singular objection does not ultimately affect the calculation of defendant's guideline range given his criminal history score exceeds the 13 points needed to arrive at a criminal history category of VI.

17

Given the proof put on by defendant at the sentencing hearing, and upon further examination of the exhibit provided by defendant, it appears to the Court that no intervening arrest occurred between the offenses described in Paragraphs 81 and 82 of the RPSR.  Therefore, with no intervening arrest and finding that defendant was sentenced on the same day for both offenses [*see* RPSR ¶¶ 81–82], the Court finds that the offenses described in Paragraphs 81 and 82 of the RPSR should be treated as a single sentence.  *See* U.S.S.G. § 4A1.2(a)(2).  Thus, the Court will **SUSTAIN** defendant's objection here.[8]

### 4.    Paragraph 86

Paragraph 86 of the RPSR states that defendant has a total criminal history score of 28 meaning, according to the sentencing table in Sentencing Guidelines Chapter 5, Part A, that defendant's criminal history category is VI [RSPR ¶ 86].  Defendant objects to this paragraph, stating that his correct criminal history score is eight for a criminal history category of IV [Doc. 241, p. 6; Doc. 276, p. 6].  Notably, at the sentencing hearing, defense counsel stated that, given the withdrawal of the objection to Paragraphs 76 and 77 of the

---

[8]    For purposes of calculating criminal history points, the Court notes that U.S.S.G. § 4A1.2(a)(2) provides that "if prior sentences are treated as a single sentence, use the longest sentence of imprisonment if concurrent sentences were imposed" and "[i]f consecutive sentences were imposed, use the aggregate sentence of imprisonment."  It is not clear from the RPSR, or defendant's exhibit, whether the sentences in Paragraphs 81 and 82 were to run concurrently or consecutively.  It appears more likely that the sentences were to run concurrent given the term of imprisonment is the same number of days, 300, the judgments for each offense note jail credit in an amount of 114 days, and defendant committed another offense on November 7, 2015 [*See* RPSR ¶¶ 81–83].  Accordingly, defendant's criminal history points for Paragraphs 81 and 82 of the RPSR should be reduced from four total points to two total points.  Regardless, however, of the accurate number of criminal history points that are to be assigned to the offenses in Paragraphs 81 and 82, the reduction in criminal history points does not affect defendant's overall criminal history category.  *See infra* Section II(C)(4).

18

RPSR, three points should be added to defendant's argued criminal history score. Essentially, defense counsel now argues that defendant's criminal history score should be 11, resulting in a criminal history category of V.

Given the rulings above, the Court does not find that the RPSR erred in reporting defendant's criminal history category as VI. As noted in footnote 8, the Court's sustainment of defendant's objection to Paragraphs 81 and 82 would only lead to a reduction, at most, of two criminal history points. This would, in turn, result in a criminal history score of 26, still well within a criminal history category of VI. And, as noted in footnote 6, even if the Court sustained defendant's objection to Paragraph 66 of the RPSR, this would still not cause a shift in defendant's criminal history category.

Therefore, defendant's objection to Paragraph 86 of the RPSR is **SUSTAINED** to the extent defendant argues that his criminal score is not 28. However, to the extent defendant argues his criminal history score is 11, such objection is **OVERRULED** as the Court has determined defendant's criminal history score to be 26. Furthermore, to the extent defendant argues that his criminal history category is V, such objection is **OVERRULED** as defendant's criminal history category remains at VI.

### D.    Objections Relating to Total Offense Level

#### 1.    Paragraph 38

Paragraph 38 of the RPSR describes the application of a two-level enhancement "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing

19

a controlled substance" pursuant to U.S.S.G. § 2D1.1(b)(12) [RPSR ¶ 38]. Further, the PSR states that "[t]he parties have agreed this enhancement applies" [*Id.*].[9]

Defendant objects to the applicability of the premises enhancement under U.S.S.G. § 2D1.1(b)(12) [Doc. 303, pp. 2–4]. Specifically, citing to Application Note 17 of U.S.S.G. § 2D1.1, defendant states that for the premises enhancement to apply, the Court must find that manufacturing or distributing a controlled substance was "one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises" [Doc. 303, pp. 2–3]. Defendant contends that the government's evidence in support of the premises enhancement does not establish that the manufacturing or distributing of a controlled substance was one of defendant's primary or principal uses for the premises, the hotel rooms,[10] rather than one of defendant's incidental or collateral uses [*Id.* at 3]. Defendant appears to argue that, at most, the rooms contained evidence of *use* of drugs, citing to the fact that, besides drug paraphernalia, only seven pills were located between both rooms [*Id.*]. Defendant also points out that he was arrested at 144 Watson Drive, Maryville, Tennessee, not at the hotel located at 144 Merchant Drive,

_____

[9] To note, the original PSR in this case did not apply the two-level enhancement to defendant's total offense level, stating that at that time "the information provided to the probation office [did] not justify this enhancement" [PSR ¶ 37]. The government, in its response to defendant's objections, appeared to lodge its own objection to the PSR's determination that the two-level enhancement did not apply [*See* Doc. 281, pp. 6–7; Doc. 281-3]. Given the RPSR applies the two-level enhancement under U.S.S.G. § 2D1.1(b)(12), the Court will consider any objection of the government as to its original absence to be **OVERRULED as moot**.

[10] Defendant also appears to contest that he maintained both hotel rooms searched by law enforcement, particularly Room #210, using the word "room(s)" in his second supplement to his notice of objections [Doc. 303, pp. 3–4].

20

Knoxville, Tennessee, despite the government's contention that he was "spotted outside a hotel where he had two rooms" shortly before he was arrested [*Id.* at 3–4 (citing Doc. 281, p. 7)].[11]  Given all the above, defendant contends that the premises enhancement under U.S.S.G. § 2D1.1(b)(12) should not apply [*Id.* at 4].

In response, the government provides that law enforcement conducted a traffic stop of defendant, "who was found to possess firearms, heroin, methamphetamine, and two hotel key cards rooms at the hotel" [Doc. 281, p. 6].  Defendant, the government states, told law enforcement that he paid rent for Room #415 at the MainStay Suites Hotels and Events ("MainStay Hotel"), but a manager at the hotel stated that defendant, "in fact, rented *two* rooms at the hotel, *in his name*, on different floors[:] Rooms #415 and #210" [*Id.* (emphasis in original)].[12]  When these rooms were searched, law enforcement discovered prescription pills, scales, plastic baggies, and scale counterweights in Room #415 and digital scales, a handgun magazine, ammunition, plastic baggies, and a blender top in Room #210 [*Id.* at 6–7].  This evidence, the government asserts, is indicative of drug trafficking [*Id.* at 7; Doc. 307, p. 2].

---

[11]  At the sentencing hearing, the government clarified that they had, in error, stated that the hotel was located at 144 Watson Drive, where defendant was arrested, rather than 144 Merchant Drive, the correct address [*See* Doc. 281, p. 6].

[12]  Additionally, the Tennessee Bureau of Investigation ("TBI") Investigative Report provided by the government states that during the traffic stop, law enforcement found a MainStay Hotel keycard with the number "415" written on it and another keycard assigned to the same hotel [Doc. 281-3, p. 1].

Additionally, the government argues that, even if defendant were to claim that one of the hotel rooms was his residence, this would not explain the additional hotel room's purpose [Doc. 307, p. 2]. Furthermore, "the case law does not provide a complete defense when a defendant resides in a place and uses the place for drug distribution" [*Id.*]. The government cites to *United States v. Bell*, 766 F.3d 634 (6th Cir. 2014) and *United States v. Leggett*, 800 F. App'x 381 (6th Cir. 2020) in support of its argument, stating that in each of these cases, the court held that a defendant's home qualified for the premises enhancement because the home had "tools of the trade" [*Id.*]. The government also notes that the contents of the hotel rooms do not "exist in a vacuum[,]" emphasizing that, on the same day the rooms were searched, defendant was arrested after offering to sell drugs to a confidential informant [*Id.* at 3]. And, during the traffic stop of defendant, drugs, firearms, ammunition, scales, and over $1,000 in currency was discovered [*Id.*]. All of this evidence, the government asserts, supports the application of the premises enhancement [*Id.*].

At the sentencing hearing, further argument was heard. Defense counsel argued that defendant's case differed factually from those cited by the government, and thus, a different result was appropriate. First, regarding *Bell*, defense counsel stated that it was known in that case that the defendant was cooking cocaine in his residence, and the defendant's ex-wife was found with a laundry basket containing cocaine, firearms, and $3,990 in cash after the defendant had called and told his ex-wife to "get all the dirty clothes" from the

residence.  *See* 766 F.3d at 636.[13]  Turning to *Leggett*, defense counsel stated that the defendant in that case was arrested at his residence, and a search of the defendant's residence uncovered a makeshift storage container with heroin inside, a scale, packaging material, three cell phones, and $700 in cash.  *See* 800 F. App'x at 381.  Defendant's case, defense counsel argued, is entirely distinguishable from *Leggett* because defendant was stopped and arrested in Blount County, away from the hotel rooms.

Defense counsel also asserted that defendant had admitted to law enforcement that a woman known as "Pam" had put down her name at the hotel as the occupant of Room #415.[14]  Defense counsel submitted that it appeared Room #415 may have been used for partying, reiterating that there is no evidence that drugs were ever dealt out of that room or Room #210.  Lastly, defense counsel argued that, given someone named "Pam" had access to the room, other people may also have had access, and it cannot be discerned what those "other people" may have been doing in Room #415.

In response, the government stated that, when dealing with a residence as the "premises," a defendant's argument is typically that the primary purpose of the residence is as a home.  However, the government contended, there are cases demonstrating this is

---

[13]  While defense counsel recited factual background of the *Bell* case, he did not clearly draw distinctions between the *Bell* case and the instant one.  However, based on the facts focused on by defense counsel, it appears to the Court that defense counsel is placing emphasis on the lack of evidence in the instant case of defendant manufacturing controlled substances in the hotel rooms and the lack of evidence demonstrating controlled substances within, or coming from, the hotel rooms themselves.

[14]  One of the TBI Investigative Reports provided by the government includes a similar statement but also indicates that the manager of the hotel informed law enforcement that no one with the first name "Pam" had submitted their name as an occupant of a room [Doc. 281-3, p. 7].

not a defense to the application of the premises enhancement. Moreover, the government argued that the "premises" here, *i.e.*, the hotel rooms, are not even residences. And thus, it is difficult for defendant to even argue that a primary purpose of the hotel rooms *was not* for drug distribution, especially given the drug paraphernalia found therein. The government submitted that its argument is weakened by the fact that defendant was not observed earlier the day of his arrest outside of the hotel and by the fact that there were no observations of drug dealing or distribution occurring at the hotel rooms. However, taking what was found in the rooms in conjunction with the fact that defendant had been communicating with a confidential informant about selling drugs on the day of his arrest[15] and defendant was found to be in possession of drugs and drug paraphernalia upon arrest, the government argued that this evidence is sufficient to support an application of the premises enhancement.

As stated previously, U.S.S.G. § 2D1.1(b)(12) provides for a two-level enhancement if a defendant "maintained a premises for the purpose of manufacturing or distributing a controlled substance." This enhancement has three elements: "[t]he defendant must (1) knowingly (2) open or maintain any place (3) for the purpose of manufacturing or distributing a controlled substance." *United States v. Whiteside*, 747 F. App'x 387, 394 (6th Cir. Aug. 29, 2018) (citation omitted). As already discussed, for the third element, manufacturing or distribution of a controlled substance "need not be the

---

[15] The government admitted that there was no indication of where defendant was intending to meet the confidential informant.

24

sole purpose" for maintaining the place. U.S.S.G. § 2D1.1 cmt. n.17. Rather, it need only be a "primary or principal use[]," as opposed to an "incidental or collateral use[]." *Id.*

While it appears defendant may object to whether he maintained Room #210 under U.S.S.G. § 2D1.1(b)(12),[16] it does not appear that he objects to the second element as it applies to Room #415. Regardless, the Court finds the third element—"for purpose of manufacturing or distributing a controlled substance"—to be determinative in this case for both rooms. *See Whiteside*, 747 F. App'x at 394. Thus, the Court will focus on only the third element in determining whether the government has shown by a preponderance of the evidence that the premises enhancement applies. *See United States v. Hill*, No. 22-5274, 2023 WL 152474, at *3 (6th Cir. Jan. 11, 2023) (citation omitted).

After reviewing the parties' arguments and the evidence submitted by the government, the Court finds, although a close call, that the government has not met their burden as to this objection. First, unlike many cases involving the premises enhancement under U.S.S.G. §2D1.1(b)(12), there were not large, or even necessarily small, quantities of drugs found within the premises here, just seven suspected prescription pills [*See* Doc. 281-3, pp. 7, 18]. *Cf. United States v. McFarland*, No. 20-5310, 2021 WL 7367157, at *8 (6th Cir. Oct. 4, 2021) (holding that the district court did not clearly err in applying the premises enhancement where the police recovered large amounts of drugs from the defendant's bedroom, which she locked with a key only she possessed, wherein the

---

[16] The Court also notes that any objection to the second element is brief with no supportive argumentation or case law.

defendant also kept drug paraphernalia, weapons, and cash). Similarly, there was no evidence of drug storage or prepackaged drugs ready for distribution within the premises. *Cf. United States v. Tippins*, 630 F. App'x 501, 504 (6th Cir. 2015) (holding that U.S.S.G. § 2D1.1(b)(12) was satisfied in part because prepackaged drugs were stashed throughout the premises and a confidential informant had visited the defendant at the premises on at least six occasions and observed defendant handling drugs for distribution); *Leggett*, 800 F. App'x at 381 (considering law enforcement's discovery of a make-shift storage container inside a fence post at the premises, "that was similar to the heroin-filled container previously found inside a fence post at another property associated with [defendant]" in determining that the premises enhancement applied as the district court had found).

There was also no evidence presented of defendant performing any drug transactions at the premises or foot traffic going in and out of the hotel rooms at issue. *Cf. United States v. Broadnax*, 777 F. App'x 137, 142 (6th Cir. 2019) (holding that the record permitted a finding that the defendant maintained the premises for the purpose of drug trafficking given the defendant had, on numerous occasions, directed people to the house to look for and purchase drugs); *United States v. Uminn*, 820 F. App'x 353, 358–59 (6th Cir. 2020) (holding that the evidence in the PSR supported the district court's application of the premises enhancement given 42 grams of suspected methamphetamine were located in the residence and statements from co-conspirators reflected that there were "several specific instances of drug-distribution activity at the [] residence over a span of multiple years"); *Hill*, 2023 WL 152474, at *1, *3 (upholding the application of the enhancement

26

and noting there were two or three nights of drug activity in a hotel room, *i.e.*, foot traffic, quantities of various drugs including over 400 grams of methamphetamine, baggies, scales, cutting agents, a pipe, and $2,530 in cash).

While the government's evidence briefly mentions that defendant had informed confidential sources that he "stays" at a hotel on Merchant Drive in Knoxville, Tennessee [*see* Doc. 281-3, p. 24],[17] there is no evidence in the record as to defendant's physical presence at the hotel, the frequency with which he was at the hotel, or again, any drug transactions made by defendant at the hotel. The government urges the Court to consider the contents of the hotel rooms in conjunction with defendant's arrangement to meet with a confidential source to sell drugs and the resulting traffic stop that uncovered defendant's possession of various drugs and firearms. There does not appear to be, however, a link between the hotel rooms, the arranged drug transaction, and the contraband discovered during the traffic stop.[18] Specifically, the government admitted that defendant was not observed on the day of his arrest at the MainStay Hotel and further admitted that there was no indication as to where defendant intended to meet the confidential informant to perform

---

[17] This evidence, coming from an affidavit in support of a search warrant, does not specifically mention the MainStay Hotel at 144 Merchant Drive, Knoxville, Tennessee.

[18] The Court also notes that, in a case report provided by the government, it states that the confidential informant requested to purchase two ounces of crystal methamphetamine from defendant, but defendant advised that he only had one ounce on him "and would have to get the other one (1) ounce" and call the confidential informant back [*See* Doc. 281-3, p. 33]. At the time of defendant's arrest, which occurred before any drug exchange with the confidential informant, law enforcement uncovered approximately 24.3 grams of crystal methamphetamine, a little under one ounce [*See id.*]. Given there was no crystal methamphetamine discovered at the hotel rooms at issue, it cannot be inferred that defendant was going to retrieve another ounce of crystal methamphetamine from those hotel rooms.

27

the drug transaction. Furthermore, when defendant was arrested, he was approximately 23 miles away from the hotel rooms at issue. Thus, there is nothing in the record that shows defendant using the hotel rooms for distribution in the events upon which the government relies.

At bottom, the Court finds that the government has failed to meet its burden in demonstrating the applicability of the premises enhancement under U.S.S.G. § 2D1.1(b)(12). Accordingly, defendant's objection to such enhancement is **SUSTAINED**, and thus, defendant's total offense level is reduced by two, resulting in a total of 29.

### 2. Paragraph 124

Paragraph 124 of the RPSR states that with a total offense level of 31 and a criminal history category of VI, "the guideline imprisonment range is 188 to 235 months" [RPSR ¶ 124]. And given the offense in Count Nine requires a minimum term of imprisonment of five years, to be served consecutively to Count One, "the total guideline imprisonment range is 248 to 295 months" [*Id.*]. Defendant objects to this paragraph, stating that with a total offense level of 29 and a criminal history category of IV, his guideline range is 121 to 151 months as it relates to Count One [Doc. 241, p. 6; Doc. 276, p. 6]. And after adding the "required mandatory minimum consecutive sentence of 60 months [for Count Nine], the total guideline range is 181 [to] 211 months" [Doc. 241, p. 6; Doc. 276, p. 6].

For the reasons set out above, defendant's objection to Paragraph 124 is **SUSTAINED** to the extent defendant argues that his total offense level is 29 but

**OVERRULED** to the extent defendant argues that his criminal history category is IV. With a total offense level of 29 and a criminal history category of VI, defendant's guideline range for Count One is 151 to 188 months. Adding in the mandatory minimum term of imprisonment of 60 months for Count Nine, defendant's resulting total guideline range is 211 to 248 months.

## IV. Conclusion

For all of the reasons set forth above, defendant's objections to the RPSR are **OVERRULED in part** and **SUSTAINED in part** or considered **WITHDRAWN**. As the Court explained *supra*, defendant's criminal history category remains unchanged but his total offense level is now 29. Thus, the Court will start its analysis of the § 3553(a) factors from a guideline range of 151 to 188 months for Count One and a total guideline imprisonment range of 211 to 248 months in consideration of the addition of Count Nine. The Court will address any remaining arguments at the final sentencing hearing.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

29